**ROBERT W. ANDERSON HOUSE-WRECKING AND EXCAVATING, INC., a corporation, Appellant (Plaintiff),**

v.

**BOARD OF TRUSTEES, SCHOOL DISTRICT NO. 25, FREMONT COUNTY, WYOMING, Appellee (Defendant).**

**BOARD OF TRUSTEES, SCHOOL DISTRICT NO. 25, FREMONT COUNTY, WYOMING, Appellant (Defendant).**

v.

**ROBERT W. ANDERSON HOUSE-WRECKING AND EXCAVATING, INC., a corporation, Appellee (Plaintiff).**

Nos. 83–138, 83–139.

Supreme Court of Wyoming.

May 3, 1984.

Joel M. Vincent of Hettinger & Leedy, P.C., Riverton, for Board of Trustees, School Dist. No. 25.

F.M. Andrews, Jr. of Andrews & Anderson, P.C., Riverton, for Robert W. Anderson Housewrecking and Excavating, Inc.

Before ROONEY, C.J., and THOMAS, ROSE, BROWN and CARDINE, JJ.

CARDINE, Justice.

This is an appeal from a judgment awarding damages for breach of contract to Robert W. Anderson Housewrecking and Excavating, Inc. in the amount of $22,540 against School District No. 25, Fremont County, Wyoming. The school district appealed from the judgment and Anderson cross-appealed on the issue of damages. We will modify the judgment as to the amount of damages awarded and affirm the judgment as modified.

Appellant raises two issues on appeal. "I. Whether the trial court's entry of judgment in favor of the plaintiff in the sum of $22,540.00 violates that rule of law that a public body may not be bound to a contract, implied from the actions or statements of its agents or officers.

"II. Whether the trial court's holding violates § 21–3–105, W.S.1977."

Appellee disagrees with the statement of the issues and rephrases it as:

"The issue in this case is not whether there was an implied contract created by the conduct of the agents or employees of the School District, but whether the School Board, by accepting an offer at a public bid letting, and communicating that acceptance to the Appellee Anderson, created a contract which could not later be revoked or rescinded."

Appellee also cross-appeals raising the issue of:

" * * * [W]hether the lower Court committed error in awarding damages of $22,540.00 to the Appellant Anderson, in view of the uncontroverted evidence of loss of profits of $98,173.75, and whether the Appellate Court should modify the Judgment to reflect the Appellant's true damages."

On July 15, 1981, the Board of Trustees of School District No. 25, Fremont County, Wyoming approved for publication the notice of an invitation to bid upon the demolition of the old Riverton High School. On August 11, 1981, the bids were opened. The low bidder was Gillingham Construction Company, Inc. of Boise, Idaho and the next low bidder was Robert W. Anderson Housewrecking and Excavating, Inc., appellee. Between the time the bids were opened and the next formal meeting of the school board, Mr. Snell, the business manager, received a call from Gillingham Construction advising they would withdraw their bid because of inability to obtain liability insurance in the State of Wyoming. Appellee, Mr. Anderson, was informed by Mr. Snell that the school district was going to accept his bid for the demolition of the school.

The next formal school board meeting was held on August 18, 1981. At that time the board, under the advice of their attorney, officially accepted the bid of Gillingham Construction Company. They then moved that the board accept the withdraw-

al of the bid of Gillingham Construction Company.[1]

The Board then voted to accept the bid of the second low bidder, Anderson, for the demolition of the Riverton High School. At that time a citizens group appealed to the board to save the high school building.

Anderson was then told that his bid had been accepted effective September 2, 1981, unless the citizens group developed another worthwhile use and plan to save the high school. No other use or plan to save the school was developed.

On September 8, 1981, Gillingham informed the board that his insurance company had now been certified to do business in Wyoming and that his original bid would remain open until September 17–18, 1981. At the regularly convened meeting of September 15, 1981, the board, by resolution, accepted the bid of Gillingham. The contract was signed with Gillingham September 22, 1981; on that same date, Snell informed Anderson that there had been new arrangements relative to tearing down

the school and that the contract had been given to Gillingham. Anderson filed suit.

Trial was to the court; and, at the conclusion, judgment was entered for appellee Anderson in the amount of $22,540.

I

Appellant raises the issue of whether a public body may be bound to an implied contract and whether § 21–3–105, W.S. 1977,[2] was violated. Appellee contends that the issue is not whether there was an implied contract, but whether there was an express contract which was breached by the school board. These arguments are interrelated and, therefore, will be discussed together.

█ Appellant contends that a municipal corporation cannot be bound by a contract which is made by its officers if the agent had no authority to enter into a contract. *Twitchell v. Bowman*, Wyo., 440 P.2d 513 (1968). The members of a board cannot act as individuals to bind an agency because the board must act as a body to validly act for and obligate the agency by

1. The minutes of the school board meeting of August 18, 1981, contain the following:

 "BUILDING REMOVAL, OLD H.S.
 "Mr. Snell explained that Gillingham Construction of Boise, Idaho was the low bidder for the demolition of the old high school, $47,000 plus $15,200 for alternate # 1 to fill in and level off the site. After the bids were discussed by the board and a decision reached to accept this bid, Mr. Snell received a call from Gillingham Construction stating that they wished to withdraw their bid due to the fact that they were unable to obtain liability insurance in the State of Wyoming. Liability insurance had been stipulated as a requirement in the bid specifications.
 \* \* \* \* \* \*
 "Mr. Leedy, the district's attorney, advised the board to officially act to accept the bid of Gillingham Construction and then Mr. Leedy could advise Mr. Gillingham that due to their refusal to accept the job, his bid bond would be forfeited.
 "320 Moved by Dennis Tippets that the board accept the bid of Gillingham Construction Co. of Boise, Idaho to demolish the old Riverton High School with a base bid of $47,-000 and an alternate # 1 bid of $15,200.00, work to be completed by October 1, 1981. Seconded by Craig Tolman. Motion carried.

 "Mr. Snell read the letter of refusal received from Gillingham Construction Co.
 "Mr. Tippets stated that the Assistant Superintendent in Charge of Business Affairs had received a letter from Gillingham Construction Co. in which Mr. Gillingham requested that he be allowed to withdraw his bid and requested return of his bid security, the reason being that he could not obtain insurance since his company is not licensed to do business in the State of Wyoming.
 "321 Moved by Dennis Tippets that the board accept the withdrawal of the bid of Gillingham Construction Company for the demolition of the old high school building but not refund the bid security. Seconded by Albert Schultz.
 \* \* \* \* \* \*
 "Motion # 321 carried."

2. Section 21–3–105, W.S.1977, provides:
 "The board of trustees of a school district shall be the governing body of the school district. A majority of the number of members of the board of trustees shall constitute a quorum for the transaction of business at any meeting of the board of trustees. No action of the board of trustees shall be valid unless such action shall receive the approval of a majority of the members elected to the board of trustees."

an express contract. *George W. Condon Co. v. Board of County Com'rs of Natrona County*, 56 Wyo. 38, 103 P.2d 401 (1940). Persons who deal with school districts are charged with a duty of ascertaining that the person with whom they are dealing possesses legal authority to bind the school district. *Porta House, Inc. v. Scottsdale Auto Lease, Inc.*, 120 Ariz. 115, 584 P.2d 579 (1978). The general rule is that a municipal corporation is not bound by a contract which is made in its name by one of its officers or a person in its employ if the officer or employee had no authority. 56 Am.Jur.2d Municipal Corporations § 504. Where a municipal contract is void because it is opposed to a mandatory statute, no contract or benefit can be implied. A public body cannot do indirectly what it is without power to do directly. *Town of Worland v. Odell & Johnson*, 79 Wyo. 1, 329 P.2d 797 (1958); *Kurz v. City of Sheridan*, Wyo., 489 P.2d 621 (1971). A school board cannot act outside of its statutory authority. *School District No. 69 of Maricopa Cty. v. Altherr*, 10 Ariz.App. 333, 458 P.2d 537 (1969). A person is charged with the notice of the limitations of a school district in its power to contract. *Sibert v. Community College of Flathead Cty.*, 179 Mont. 188, 587 P.2d 26 (1978).

Several of the cases cited by appellant as authority are easily distinguished from the present situation. There is no allegation in this case that the school board was acting outside of its statutory authority, nor that it was without power to enter into this type of contract. We note that on occasions, courts will find an implied contract in situations where the actual authority of the public agent was defective if the contract was one within the authority of the public agency. *Barendregt v. Walla Walla School Dist. No. 140*, 26 Wash.App. 246, 611 P.2d 1385 (1980). However, we do not feel it necessary to resolve the question of whether or not a public agency can be bound by an implied contract because, after a careful review of the record, we find an express contract was created.

 There is not a conflict in the facts, but there is a conflict in the interpretation of the facts as to whether they constituted a contract. We must

" * * * give to the evidence of the successful party every favorable inference which may be reasonably and fairly drawn from it. * * * " *Crockett v. Lowther*, Wyo., 549 P.2d 303, 308 (1976).

We also give deference to the findings of the trial judge because,

" * * * where the existence and not the validity or construction of a contract or the terms thereof is the point in issue, and the evidence is conflicting or admits of more than one inference, it is for the jury or other trier of the facts to determine whether the contract did in fact exist * * *." 17A C.J.S. Contracts § 611.

Therefore, using these standards, we look to the applicable law of contracts and the record to analyze whether an express contract was created.

 Whether a contract has been entered into depends upon the intent of the parties and is a question of fact. *Prince Enterprises, Inc. v. Griffith Oil Co., Inc.*, 8 Kan.App.2d 644, 664 P.2d 877 (1983). A contract assumes the meeting of minds and an agreement on a thing to be done. *Crockett v. Lowther*, supra. See *Cave Construction, Inc. v. United States*, 387 F.2d 760 (10th Cir.1967). A municipal corporation is bound by its contracts to the same extent as a natural person would be, provided that the contract is one it could legally make. The Law of Municipal Corporations, 5 McQuillin § 19.39 (1981).

The legal requirements regarding the school district's actions are set forth in § 21-3-105, W.S.1977, supra fn. 2. Therefore, we must decide (1) if there was a legally convened meeting of the school board; (2) if the resolution passed by the board acted as an acceptance of Anderson's bid offer; (3) if an oral contract would bind the school district; and (4) if these questions are answered in the affirmative, does the board have discretion to withdraw its acceptance.

At the August 18, 1981 school board meeting, the board discussed the demolition

of the high school building.[3] Resolution 322 was proposed at the meeting of August 18, 1981. At that time a citizens group addressed the board with an appeal to save the old high school building and motion 322 was withdrawn. Motion 323 was proposed and passed. Resolution 323 stated that:

"323 Moved by Mr. Tippets that in view of the fact that Gillingham Construction is unable to honor their commitment to demolish the old high school building, that the board award the bid to Mr. Bob Anderson of Denver, CO, base bid of $93,220.00 and alternate # 1 bid of $19,-480.00 with a completion time of 30 days, but that the bid not be awarded until the 2nd day of September, 1981, in order that the patrons of this School District may have time to check into another worthwhile use for this structure. Seconded by Pat Ferris. Motion carried."

This resolution was passed at a legally convened meeting of the board. It was passed by a majority of the school board, and there was a quorum present at the time.

■ However, this contract was not to have an immediate effect. Therefore, we must determine whether the bid was accepted creating a binding contract subject to a condition precedent or whether the resolution acted only as an agreement to make a contract in the future. A condition precedent "is an act or event, other than a lapse of time, which must exist or occur before a duty of immediate performance of a promise arises." The Law of Contracts, Calamari & Perillo § 11–3 (1977). A condition precedent must be performed before an agreement shall become a binding contract. A condition precedent can relate to the formation of a contract. 17A C.J.S. Contracts § 338. This award was tentative only in the sense that the demolition of the building was a prerequisite to the finality of the award and when this contingency occurred, the board was as effectively bound as if signed legal documents had been delivered. See, *McIntosh Road Materials Co. v. Woolworth*, 365 Pa. 190, 74 A.2d 384 (1950).

■ We do not find a problem with the fact that this contract was created orally. State contracts need not be in writing in order to be binding unless there is a statutory requirement. 81A C.J.S. States § 158. An agreement to make a written contract where the terms are mutually understood and agreed on in all respects is as binding as the written contract would be if it had been executed. When minds have met and terms have been agreed on, then the agreement is obligatory. There is nothing left for the future. The negotiations are over. 17 C.J.S. Contracts § 49. If there were a statutory requirement for a written contract, then the board would not be bound to a contract created through resolution. *Schull Construction Co. v. Board of Regeants of Education*, 79 S.D.

3. The minutes of the school board meeting of August 18, 1981, reflect the following regarding the acceptance of Anderson's bid:

"322 Moved by Dennis Tippets, that in view of Gillingham Construction's unwillingness to accept the contract to demolish the old Riverton High School, he would recommend that the second low bidder, Bob Anderson of Denver, CO, be accepted in the amount of $93,-220.00 with an alternate of $19,480.00, for the demolition of the old Riverton High School. Mr. Anderson requested 30 days in which to complete this task. Seconded by Craig Tolman.

"At this time Tonia Burnett addressed the board with an appeal to save the Old High School Building. Mr. Carroll stated that the building had been stripped by the district in preparation for demolition, that the board had been working on this project for the last 4 months, and that it would take a great deal of money to put it in usable condition, having been condemned by the State Fire Marshal some years ago.

"Mr. Youtz stated that a 'Citizens Committee' had spent considerable time going over the building considering all of the possibilities before making the recommendation that the board construct a new high school. Mr. Youtz also stated that it is possible that the district would need this area for future expansion and since it is a school campus, the building directly to the east being used for classes, the district would be a little bit particular as to what the old building was used for. There is also a time line in letting the bids that have been received. Holding up on bid letting at this time may pose a legal problem for the district and make it difficult to obtain bids at a later date if such a request might need to be made.

"Mr. Tippets withdrew motion # 322."

487, 113 N.W.2d 663, 3 A.L.R.2d 857 (1962). But where neither the requests for bids nor the bid forms designated the manner in which the bids could be accepted, an oral acceptance communicated to the offeror is legally sufficient to establish a binding contract. *Allied Contract Buyers v. Lucero Contracting Co.*, 13 Ariz.App. 315, 476 P.2d 521 (1970). When a city council has passed a resolution awarding a contract, the contract is complete and, absent fraud, mutual mistake or other grounds for rescission, the city is without power to rescind. *City of Susanville v. Lee C. Hess Co.*, 45 Cal.2d 684, 290 P.2d 520 (1955). There are no allegations in this situation of fraud or mutual mistake.

The time to exercise discretion is when the bids are opened as advertised and the public body makes the award. After that decision the body is without further discretion. *McIntosh Road Materials Co. v. Woolworth*, supra. A bid submitted to a public body in response to an ad constitutes an irrevocable offer. When that offer is accepted, the board is bound by the contract. *Elsinore Union Elementary School District of Riverside County v. Kastorff*, 129 Cal.App.2d 60, 276 P.2d 112 (1954). See *Gurtler, Hebert & Co. v. Orleans Parish School Board*, La.App., 251 So.2d 51 (1971).

Therefore, we find that the resolution created a binding contract with Robert W. Anderson Housewrecking and Excavating, Inc. as soon as Anderson had notice of the award. Notice was communicated to Anderson by Mr. Snell on August 19. This contract was created with a condition precedent which was that if the citizens group had been able to find alternate solutions for the high school, the school board would not be bound by the contract with Robert W. Anderson Housewrecking and Excavating, Inc. However, this event did not occur. Therefore, the school board was bound by its contract with Robert W. Anderson Housewrecking and Excavating, Inc.; it did not have discretion to revoke by awarding the contract to demolish the building to Gillingham; and the attempted revocation by the school district was a breach of the Anderson contract.

Appellee argues that we should apply estoppel against the school board because of misrepresentation and reliance; however, it is unnecessary to reach that question since we have found there was an express contract which was breached.

## II

Whether the amount of damages was correctly calculated.

Appellee has cross-appealed contending that the amount of damage of $22,540 was not supported by the evidence. Mr. Anderson's accountant testified that the net profit on specific other jobs ranged from a profit of 61.94% to 74%. She testified that Anderson's *average* net profit on jobs was between 62% and 64½%. Anderson contends that this testimony was not attacked on cross-examination nor was it rebutted by the school district in its case in chief. Testimony was elicited, however, from Anderson upon cross-examination that the gross sales from March of 1981 to March 1982 were $475,490.10 with a net profit of $125,350.18, which would have created a yearly profit of 26%.

Appellee, in this issue, contends that the trial court erred in not allowing it damages of at least 62% of the bid. It is apparent from the record that the trial court was not convinced by this evidence. It seems obvious that the damages awarded were based upon the average 26% profit shown in a previous year. This amount, $29,302, was the lowest amount that could be awarded upon the evidence adduced. The court, however, awarded $22,540 as damages rather than 26% of the bid or $29,302. In *Douglas Reservoirs Water Users Ass'n v. Cross*, Wyo., 569 P.2d 1280 (1977), the findings of fact with respect to damages did not contain an itemization of the various damages. Our difficulty with the case was not whether there were damages but with the court's ultimate determination of the amount of damages. Since the trial judge did not explain why the amount was reduced, nor did the record reflect a reason, we remanded with directions to vacate the judgment and enter judgment in favor of the plaintiff for a modified sum.

We are in accord with Montana that in situations where the judgment does not result from passion or prejudice and any error may be ascertained by mathematical calculations, the supreme court may modify without reversing. *Zook Brothers Const. Co. v. State,* 171 Mont. 64, 556 P.2d 911 (1976). See *Bohrer v. Clark,* 180 Mont. 233, 590 P.2d 117 (1978).

Damages for breach of contract are calculated to put the plaintiff in the same position as if the contract had been performed, less proper deductions. The damages should compensate for the loss which would have been prevented by a full performance of the contract. *Reynolds v. Tice,* Wyo., 595 P.2d 1318 (1979); *Zitterkopf v. Roussalis,* Wyo., 546 P.2d 436 (1976). Therefore, we affirm as to the breach of contract and remand with directions to vacate the award of $22,540 and enter judgment in favor of the plaintiff for the sum of $29,302.