2002 WY 36

**WHITLOCK CONSTRUCTION, INC., a Wyoming corporation, Appellant (Plaintiff),**

**v.**

**SOUTH BIG HORN COUNTY WATER SUPPLY JOINT POWERS BOARD; The Wyoming Water Development Commission, State of Wyoming; and Roy Prior, individually and in his official capacity as an employee of the Wyoming Water Development Commission, Appellees (Defendants).**

**No. 00–45.**

Supreme Court of Wyoming.

March 6, 2002.

Joseph E. Darrah and S. Joseph Darrah of Darrah & Darrah, P.C., Powell, WY. Argument by Mr. S. Joseph Darrah, Representing Appellant.

Virgil G. Kinnaird, Sheridan, WY. Argument by Mr. Kinnaird, Representing Appellee South Big Horn County Water Supply Joint Powers Board.

Lou Piccioni of Mead & Phillips, Cheyenne, WY. Argument by Mr. Piccioni, Representing Appellees Wyoming Water Development Comm'n; State of Wyoming; and Roy Prior.

Before LEHMAN, C.J., and GOLDEN, HILL, and KITE, JJ.

LEHMAN, Chief Justice.

[¶1] This is an appeal from a district court order dismissing Whitlock Construction's claims based upon the finding that no binding contract existed between Whitlock and the South Big Horn County Water Supply Joint Powers Board (JPB). We hold that a contract did exist between Whitlock and the JPB but affirm the order dismissing the claims on the ground that performance under the contract never became due because a necessary condition to performance did not occur.

### ISSUES

[¶2] Whitlock states the issues as follow:

1. Whether the actions of the appellee WWDC and their representative, Roy Prior, or are in violation of competitive bidding requirements and should be declared arbitrary and capricious, without authority or discretion and not otherwise in accordance with relevant law.

2. Whether actions of the appellee Joint Powers Board in rescinding its award of a public construction contract to appellant and then awarding the same contract to a bidder which the Joint Powers Board previously rejected as an unresponsive bidder violates contract law and competitive bidding requirements and should be declared arbitrary and capricious, without legal authority or discretion, and not otherwise in accordance with relevant law.

3. Whether the trial court erred in granting defendants' motion for summary judgment by failing to find that a contract was formed between the appellee JPB and appellant when the JPB unconditionally accepted appellant's bid (offer) which contained a promissory condition that the JPB would use its best efforts to seek agency concurrence with the contract award to appellant, but the JPB failed to reasonably seek concurrence from the funding agency.

We discern the following issues for our review:

1. Whether the JPB breached its contract by rescinding the award to Whitlock after the funding agencies did not concur.

2. Whether the JPB breached the implied covenant of good faith and fair dealing by not obtaining the concurrence of the funding agencies.

3. Whether the JPB abused its discretion or acted arbitrarily and capriciously in rescinding the award to Whitlock and awarding the project to Larry's.

4. Whether the WWDC or Prior committed an abuse of discretion or acted unlawfully in not concurring in the award to Whitlock and concurring in the award to Larry's, Inc.

### FACTS

[¶3] Whitlock Construction is located in Powell, Wyoming and is engaged in the busi-

ness of installing underground utilities. The South Big Horn County Water Supply Joint Powers Board (JPB) was established to oversee installation of a municipal water line from two artesian wells near Manderson, Wyoming to provide domestic water supply to the residents of Manderson, Basin, and South Big Horn County Water Districts. The Wyoming Water Development Commission (WWDC) is an agency of the State of Wyoming and was one of the primary funding agencies for the installation project.[1] Roy Prior was employed by the WWDC as a water development engineer.

[¶ 4] In May of 1997, the JPB published a notice of advertisement for bids in the local newspaper for the purpose of soliciting competitive sealed bids for the construction of one phase of the water line. In preparation for submitting a bid on the project, Whitlock obtained the project manual, bid specifications, and plans. The project manual provided to all of the bidders on the project contained the following provision:

*Contract Approval.*

1.2 Concurrence by the FmHA State Director or designee in the award of the CONTRACT is required before it is effective and the "FmHA Concurrence" (Section 15), shall be attached and made a part of the Agreement.

The project manual also contained a concurrence form which stated:

This CONTRACT shall not be effective unless and until concurred in by the State Director of the Farmers Home Administration, U.S. Department of Agriculture or a delegated representative.

[¶ 5] Whitlock does not dispute that these provisions were contained in the documents it received prior to submitting a bid. Whitlock also does not dispute that it reviewed the documents before submitting its bid. The notice of claim filed by Whitlock with the State pursuant to the Wyoming Governmental Claims Act acknowledges the "bid and

contractual requirement that the State and Federal governmental agencies involved are required to concur at the bid selection."

[¶ 6] After reviewing the project documents, Whitlock prepared and submitted a bid. Four other bids were submitted by other entities. One of those bids, submitted by Larry's Inc., was lower than Whitlock's bid. The project engineer analyzed and evaluated the bids and submitted a report to the JPB in which he noted problems with the low bid submitted by Larry's.

[¶ 7] On July 15, 1997, at a special meeting of the JPB, the project engineer's report was discussed, and the JPB voted unanimously to accept the Whitlock bid. Whitlock was notified of the JPB action by telephone later that same evening. The parties apparently are in agreement that the requirement of agency concurrence was not mentioned during the telephone call.

[¶ 8] After the special meeting, on July 16, the JPB's attorney sent a letter to the JPB stating, among other things, that the minutes of the July 15 meeting should be amended to reflect that acceptance of Whitlock's bid was contingent upon agency approval. At a regular meeting of the JPB on August 6, a motion was made and passed to amend the July 15 minutes. The July 15 minutes contained in the record state:

Following a discussion on the Bid Analysis for the Basin Area Water Supply Project bid letting Mel Reid made a motion to accept the bid of Whitlock Construction as recommended by Joint Powers Board Attorney Robert Gish and Graham, Dietz and Associates. Lloyd Franks seconded and the motion carried with unanimous vote.

Phil Julliard made a motion to authorize Chairman Joyce to sign the Notice of Award to Whitlock Construction *when the bid has received concurrence from the funding agencies.* Seconded by Lloyd Franks and carried unanimously.

(Emphasis added.) The italicized language was added by amendment.

1. The Rural Utility Service (RUS) of the Farmers Home Administration (FmHA) was the other primary funding source for the project but was not named as a party in this action.

[¶ 9] On July 16, 1997, the attorney for the JPB also wrote a letter to the RUS and WWDC setting forth the reasons for the JPB's decision not to accept the low bid submitted by Larry's, Inc. The RUS and WWDC asked for more information and, on July 22, the project engineer forwarded another letter to them.

[¶ 10] Upon reviewing the information provided, Prior, on behalf of the WWDC, notified the JPB that WWDC did not concur with the award to Whitlock because Larry's, Inc. was the low bidder and it had not been demonstrated to WWDC's satisfaction that Larry's was not a responsible bidder. The next day, RUS notified the JPB that it also did not concur in the award to Whitlock. A special meeting was held August 18, 1997, at which time the JPB rescinded the award to Whitlock and awarded the bid to Larry's, Inc. The WWDC and RUS concurred in that award.

[¶ 11] On March 6, 1998, Whitlock filed a complaint and petition for review of agency action in the district court against the JPB, the WWDC, and Roy Prior alleging violations of the competitive bidding statutes, due process, equal protection, and 42 U.S.C. § 1983. Whitlock also alleged a claim for breach of contract and sought declaratory judgment that a binding contract existed between Whitlock and the JPB, that any contract between Larry's and the JPB was void, that the acts of the JPB and WWDC in rescinding the award to Whitlock and awarding the project to Larry's exceeded their authority and were void, and that Whitlock was entitled to money damages.

[¶ 12] The JPB answered the complaint on April 20, 1998, alleging as an affirmative defense that all parties were aware that concurrence in the contract award by the funding agencies was a condition precedent to the formation of a contract. On April 29, 1998, the WWDC and Prior filed a motion to dismiss or in the alternative for a more definite statement. The court granted the motion for more definite statement; and, on December 3, 1998, Whitlock filed an amended complaint. The WWDC and Prior filed an answer on December 14. The JPB answered on December 16.

[¶ 13] On February 19, 1999, the WWDC and Prior moved for summary judgment. The JPB likewise moved for summary judgment on May 26, 1999. After a hearing on December 2, 1999, the court granted summary judgment as to all defendants by order dated January 13, 2000. In that order, the district court held that no binding contract existed between Whitlock and the JPB because the requisite contingency to the contract, concurrence by the funding agencies, did not occur. The court further held that the actions of the JPB in rescinding the award to Whitlock and accepting the bid of Larry's, Inc. were not arbitrary, an abuse of discretion, or unreasonable given the funding agencies' refusal to concur in the award to Whitlock. As for the claims against WWDC and Prior, the court found that they had a right to concur or not concur, and that their actions were reasonable and within the bounds of the law. Whitlock timely filed its notice of appeal.

## STANDARD OF REVIEW

[¶ 14] The standard of review for summary judgment has been stated as follows:

> Summary judgment is appropriate if the record, viewed in the light most favorable to the non-moving party, reveals that no genuine issues of material fact exist and the prevailing party is entitled to judgment as a matter of law. *Terry v. Pioneer Press, Inc.*, 947 P.2d 273, 275 (Wyo.1997); *Davis v. Wyoming Medical Center, Inc.*, 934 P.2d 1246, 1250 (Wyo.1997); W.R.C.P. 56(c). A fact is material if it establishes or refutes an essential element of a claim or defense. *Tidwell v. HOM, Inc.*, 896 P.2d 1322, 1324 (Wyo.1995). In evaluating summary judgment, we apply the same standards as the trial court, without affording any deference to the trial court's decisions on issues of law. *Wilder v. Cody Country Chamber of Commerce*, 868 P.2d 211, 216 (Wyo.1994).

*Worley v. Wyoming Bottling Co., Inc.*, 1 P.3d 615, 620 (Wyo.2000).

## *DISCUSSION*

### *Claims against the JPB*

#### 1. Existence of a Binding Contract

[¶ 15] Whitlock claims that when the JPB accepted its bid and awarded Whitlock the contract, a binding contract existed between itself and the JPB. Whitlock characterizes the JPB's acceptance of its bid as an unconditional acceptance of a conditional promise. Once a binding contract existed, Whitlock claims, the JPB had an implied contractual duty to use good faith efforts to secure the concurrence of the funding agencies. The JPB breached this duty, Whitlock contends, by failing to use good faith to obtain agency concurrence.

[¶ 16] In contrast, the JPB argues (and the district court held) that a binding and enforceable contract was not formed between the parties because the funding agencies did not concur in the award to Whitlock and, therefore, the requisite contingency to a binding contract never occurred. Citing *Mad River Boat Trips, Inc. v. Jackson Hole Whitewater, Inc.*, 803 P.2d 366, 368 (Wyo. 1990) and *Robert W. Anderson Housewrecking & Excavating, Inc. v. Board of Trustees, Sch. Dist. No. 25*, 681 P.2d 1326, 1331 (Wyo. 1984), the JPB characterizes the required concurrence as a condition precedent to the formation of a binding contract. Because there was no binding contract, the JPB claims, there was no implied covenant of good faith and fair dealing.

[¶ 17] In *Robert W. Anderson Housewrecking,* we were presented with facts similar to those presented in this case. The school board sought bids for demolition of a school. Gillingham Construction was the low bidder. Anderson was the next low bidder. Before the school board met to review the bids, Gillingham withdrew its bid. At the next board meeting, the board passed a resolution to accept Anderson's bid with the condition that a citizens' group be given time to find another use for the building. After the meeting, Gillingham renewed its bid. The school board accepted Gillingham's bid and advised Anderson that the contract had been awarded to Gillingham.

[¶ 18] We were asked to determine whether acceptance of Anderson's bid by the school board created a binding contract subject to a condition precedent, or an agreement to make a contract in the future. We held that the school board resolution to award the project to Anderson created a binding contract with Anderson once he had notice of the award. We said that the contract was created with the condition precedent that if the citizens' group found another use for the school, the school board would not be bound by the contract. Because the condition never occurred (the citizens' group never found another use), we held that the school board was bound by its contract with Anderson and was not free to revoke the contract and award the project to Gillingham. Implicit in our holding was the conclusion that if the condition had occurred, the board would not have been bound by its contract with Anderson.

[¶ 19] We were faced with similar facts in *Mad River Boat Trips, Inc. v. Jackson Hole Whitewater, Inc.*, 803 P.2d 366. The parties entered into a contract for the sale of two whitewater rafts and special use permits issued by the Forest Service. The contract provided that it was contingent upon the consent of the Forest Service to an assignment in trust. The Forest Service did not consent to the assignment in trust, and Mad River revoked the contract. Jackson Hole Whitewater, Inc. filed a complaint claiming breach of contract. We held that performance under the contract was contingent upon the consent of the Forest Service; and when the contingency did not occur, the parties were excused from performance.

 [¶ 20] *Anderson* and *Mad River* are controlling as to the result in this case. The project documents provided to Whitlock clearly stated that concurrence by FmHA or its designee was required before any contract

award became effective. Whitlock concedes that it was aware of this requirement when it submitted a bid on the project. Although a contract existed once Whitlock was informed the project was his, performance under the contract never became due because the contingency—agency concurrence—never occurred. When the contingency failed to occur, the parties were relieved of performing under the contract.

[¶ 21] The difference between our holding in this case and the holding in *Anderson* is that we do not utilize the "condition precedent" language relied upon by the court in *Anderson*. Rather, we adopt the terminology of the *Restatement, Second, Contracts* § 224 which references simply "condition" and defines it as "an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due." In discarding the phrase "condition precedent," we are persuaded that the term "condition" is simpler, no less accurate, and less susceptible to confusion and misinterpretation. *See* discussion at pp. 11–14, 8 *Corbin on Contracts,* § 30.7 (1999).

[¶ 22] We hold that a binding contract existed between the parties—there was an unconditional acceptance of a conditional promise. However, the contract was subject to a condition which had to occur before performance under the contract became due: that is, concurrence by the FmHA or its designee. Because the contingency did not occur, performance under the contract did not become due.

## 2. Breach of the Implied Covenant of Good Faith

[¶ 23] Whitlock claims that the JPB breached an implied duty which existed in the contract to use good faith efforts to obtain the concurrence of the funding agencies. In *Scherer Constr., LLC v. Hedquist Constr., Inc.,* 2001 WY 23, ¶ 24, 18 P.3d 645, ¶ 24 (Wyo.2001), we adopted § 205 of the *Restatement, Second, Contracts* and held that parties to a commercial contract may bring a

claim for breach of the implied covenant of good faith and fair dealing based upon a contract theory. Because we have said that a valid contract existed between Whitlock and the JPB, it follows that a covenant of good faith and fair dealing is implied in the contract.

[¶ 24] The implied covenant of good faith and fair dealing

requires that a party's actions be consistent with the agreed common purpose and justified expectations of the other party.... The purpose, intentions and expectations of the parties should be determined by considering the contract language and the course of dealings between and conduct of the parties. The covenant of good faith and fair dealing may not, however, be construed to establish new, independent rights or duties not agreed upon by the parties. In other words, the concept of good faith and fair dealing is not a limitless one. The implied obligation must arise from the language used or it must be indispensable to effectuate the intention of the parties. In the absence of evidence of self-dealing or breach of community standards of decency, fairness and reasonableness, the exercise of contractual rights alone will not be considered a breach of the covenant.

*Scherer,* at 653–54 (internal quotes and citations omitted). Although many claims for breach of good faith involve questions of fact making summary judgment inappropriate, summary judgment may be appropriate where, under the facts in the record, the party's actions were in conformity with the clear language of the contract. *Scherer,* at 654, fn. 2.

[¶ 25] Applying these standards, we find no breach of the implied covenant under the facts presented. The contract language provided that the contract was contingent upon agency concurrence. The contract language did not place an affirmative duty upon the JPB to secure agency concurrence. Had the parties intended to impose such a duty upon the JPB, they were required to ex-

pressly state that intention in the contract itself. We are not willing to infer that such a duty existed absent clear language in the contract indicating that was the parties' intent.

[¶ 26] Moreover, were we to conclude that such a duty was imposed upon the JPB by express terms of the contract, the facts before us suggest that the JPB took reasonable steps to secure the concurrence of the funding agencies. By two separate letters, the JPB presented its reasons for awarding the contract to Whitlock rather than the low bidder. Despite the information provided by the JPB, the funding agencies chose not to concur in the award to the second lowest bidder. We find nothing in the record to support Whitlock's claim that the JPB acted unreasonably.

### 3. Abuse of Discretion / Arbitrary and Capricious Action

[¶ 27] Whitlock also claims the JPB abused its discretion and acted arbitrarily and capriciously in rescinding the award to Whitlock and awarding the project to Larry's, Inc. We have said that the JPB acted reasonably in attempting to secure the concurrence of the funding agencies. Despite those efforts, the funding agencies apparently were not persuaded that sufficient justification existed to depart from the established practice of awarding contracts to the lowest bidder, and they withheld their concurrence. Thereafter, the JPB had two choices: stick with the award to Whitlock and risk losing federal and state funding or rescind the award to Whitlock and award the contract to the lowest bidder. Under these circumstances, we do not find an abuse of discretion or that the JPB's actions were arbitrary and capricious.

### Claims against the WWDC and Prior

[¶ 28] Citing provisions of 7 C.F.R. § 1942.18, Whitlock claims that matters relating to bidding and the selection process were vested solely in the JPB and not the WWDC or Prior. None of those provisions, Whitlock asserts, authorizes the WWDC, or Prior acting at the behest of the WWDC, to withhold concurrence based upon the WWDC's own independent determination of the lowest responsible bidder.

[¶ 29] Whitlock's claim that the JPB was solely authorized to select or reject a bidder ignores subsection (e)(2) of 7 C.F.R. § 1942.18, which provides in essence that no contract has full force and effect until it has been approved by the FmHA or its successor agency (the RUS in this case). The section further provides that the agency is responsible for approving construction contracts. Consistent with these provisions, the Wyoming Public Works Act expressly recognizes that any public works contracts in Wyoming which are funded in part by a federal agency are subject to federal law. Wyo. Stat. Ann. § 16–6–108 (LexisNexis 2001). Thus, pursuant to federal and state law, the RUS had the authority to approve or reject a bidder, and that authority was not vested solely in the JPB as Whitlock contends.

[¶ 30] Whitlock's claim also ignores Wyoming law which gives the WWDC the authority and the obligation to review bids on the project and to concur or not concur in JPB action. As pointed out by the WWDC and acknowledged by Whitlock, Wyo. Stat. Ann. § 41–2–114(d) (LexisNexis 2001) authorizes the WWDC to withhold funds on a water project when it is determined that the project is not in the public interest. Section 41–2–118(a)(xiii) (LexisNexis 2001) further authorizes the WWDC to represent the State's interests in negotiation and construction of water projects. Pursuant to these sections, the WWDC was obligated not to concur in the award to Whitlock if it believed that award did not serve the interests of the public or the State.

[¶ 31] Additionally, Wyo. Stat. Ann. § 16–1–303(f) (LexisNexis 2001) of the Wyoming Joint Powers Act, which establishes the state drinking water revolving loan account applicable to public water supplies in Wyoming (including the municipal water line at

issue here), requires the WWDC to evaluate engineering designs and studies and provide technical and administrative management of contracts for projects involving public water supplies. Wyo. Stat. Ann. § 16–6–119 (LexisNexis 2001) (Public Works and Contracts) further provides that every state board, commission or agency (including the WWDC) is authorized to determine qualifications and responsibilities for bidders on contracts for public projects. Given these provisions, it was clearly the legislature's intent that the WWDC be actively and directly involved in reviewing bids, determining responsible bidders, and withholding funds when necessary in order to ensure that projects involving the public water supply serve the best interests of the public and the State of Wyoming. To adopt Whitlock's argument that the WWDC has no authority to concur or not concur in contract awards of this nature would be contrary to legislative intent as reflected in the above statutes and would be to divest the WWDC of any meaningful ability to influence public contracts and protect the public interest.

### *Claims against the JPB, WWDC and Prior*

#### 1. Violation of competitive bidding requirements

[¶ 32] Whitlock next claims the JPB, the WWDC, and Prior violated the competitive bidding requirements by awarding the contract to a bidder whose bid materially deviated from the invitation to bid. In support of the claim, Whitlock cites a number of cases, including *State v. Weisz & Sons, Inc.*, 713 P.2d 176 (Wyo.1986).

[¶ 33] In *Weisz*, the Department of Administration and Fiscal Control (DAFC) rejected the low bidder on a slurry injection contract for not being responsive and awarded the contract to the second low bidder. The trial court reversed, enjoined DAFC from awarding the contract to anyone but the low bidder, and held that DAFC abused its discretion when it decided the low bidder's failure to include certain documents was a material variance.

[¶ 34] On appeal to this court, the issue in *Weisz* was whether a trial court has the authority to substitute its discretion for that of a state agency and award a contract through an injunction. The court held that under the facts presented, the trial court should have deferred to the judgment and discretion of DAFC and had no authority to award the contract.

[¶ 35] The court quoted art. II, § 2 of the Wyoming Constitution which provides:

> The powers of the government of this state are divided into three distinct departments: The legislative, executive and judicial, and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any powers properly belonging to either of the others, except as in this constitution expressly directed or permitted.

*Weisz*, at 184. The court said:

> The judicial department has jurisdiction over acts that are illegally done, but to extend its power over acts done in good faith, pursuant to the exercise of an honest judgment, and within the jurisdiction of the person or persons performing them, would be, in the absence of legislative authorization, judicial usurpation inconsistent with the fundamental constitutional principle of division of power.

*Id.* (quoting *Bunten v. Rock Springs Grazing Ass'n*, 29 Wyo. 461, 476, 215 P. 244, 248 (1923)). The court went on to say that courts are warranted in setting aside action of an administrative agency only where its action is arbitrary or fraudulent or where there is an illegal exercise of discretion. *Id.* The court used the words dishonesty, bad faith, illegality, and oppressiveness to describe agency action warranting judicial intervention. The term "abuse of discretion" in its application to agency conduct, the court said, carries with it a connotation of illegal and other conduct smacking of censurable behavior, justifying judicial intervention. *Id.* at 185.

[¶ 36] Applying these principles, we are unable to find from the statutes, applicable

law, rules and regulations, and the record on appeal that the procedures followed by the JPB, WWDC, and Prior were anything but lawful, reasonable, and in the exercise of honest judgment, good faith, and accepted competitive bidding practices. Under these circumstances, we will not interfere and substitute our judgment for that of the JPB or the WWDC.[2]

[¶ 37] Whitlock goes on at some length in his brief about the deficiencies contained in Larry's bid, including the failure to acknowledge addendas to the contract, the failure to list equipment, and the listing of only one subcontractor. We are satisfied that these are matters of judgment with which the judicial branch may not interfere. As the court said in *Weisz:*

> It is the responsibility of the public agency, which is charged with contracting, to accept that bid which, in its judgment, would provide the best project for the money. Inherent to its duties, presumed superior knowledge, and expertise, the responsible public authority must have wide latitude in which to exercise its judgment as to the best means of accomplishing that objective, and courts are reluctant to enjoin such administrative functions in the absence of dishonesty, fraud, collusion, or lack of good faith.

*Weisz* at 185–86. As the court also said:

> It is a general rule that bids for public contracts must substantially comply with

the requirements of the specifications for bidding and the directions to prospective bidders. The determination as to whether these requirements are satisfied and the awarding of a contract are acts of discretion which will be enjoined only if done illegally, arbitrarily, capriciously, or unreasonably.

*Weisz,* at 186.

[¶ 38] Whitlock has presented no evidence which persuades us that the acts of the JPB, the WWDC, or Prior were illegal, unreasonable, arbitrary, capricious, dishonest, fraudulent, in bad faith, or collusive.

### CONCLUSION

[¶ 39] The district court order granting summary judgment for the JPB, WWDC, and Prior and dismissing Whitlock's claims is affirmed.

---

2. Whitlock also cites *Centric Corp. v. Barbarossa & Sons, Inc.,* 521 P.2d 874 (Wyo.1974) in support of the claim that the competitive bidding statutes were violated. There, an agency rejected the lowest bid because the bidder failed to file an affirmative action plan with its bid. The court reversed, holding that the failure to file an affirmative action plan was not a material departure from the bid requirements.

In *Weisz,* the court acknowledged *Centric* but noted that it appeared to stand alone in Wyoming jurisprudence and cautioned that its holding must be closely confined to its specific facts. As in *Weisz,* we find that *Centric* furnishes no guidelines dispositive of the issues before us in this case.